UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MICHAEL GEDEON,                )
    Plaintiff                        )
                                      )          16-cv-30054-MGM
v.                                           )
                                      )
CITY OF SPRINGFIELD, et al.     )
    Defendants.                    )

REPORT AND RECOMMENDATION REGARDING PLAINTIFF'S MOTION FOR
PRELIMINARY INUNCTION AND TEMPORARY RESTRAINING ORDER; AND
MOTIONS TO DIMISS BY DEFENDANTS CITY OF SPRINGFIELD AND
CAMPAGNARI CONSTRUCTION, LLC
(Dkt. Nos. 3, 17 & 18)

ROBERTSON, U.S.M.J.

    I.      INTRODUCTION

On or around May 3, 2012, the City of Springfield filed an emergency motion in the Hampden County Housing Court ("Housing Court") for access to property located at 155-157 Oak Grove Avenue owned by plaintiff Michael Gedeon ("Plaintiff" or "Gedeon") and Andrea Gedeon. Following a series of hearings in the Housing Court, certain details of which are set forth below, the Housing Court appointed a receiver to remedy conditions on the property. A successor receiver ultimately was appointed and authorized by the Housing Court to record a lien in excess of $138,000 against the property. Plaintiff, who is self-represented,[1] has filed two law suits in this court based on these events. The defendants named in this law suit are the City of Springfield ("City"); M.J.A Enterprise; M.J.A. Business Enterprise Inc.; NJP Enterprise LLC, and Campagnari Construction, LLC ("Campagnari").

---

[1] Pursuant to an order entered on May 5, 2016, Plaintiff is proceeding *in forma pauperis* in this action (Dkt. No. 9). In making its recommendation on the pending motions, the court has taken into consideration its obligation to screen such cases pursuant to 28 U.S.C. § 1915(e)(2) at the earliest practicable point in time.

1

Before the court are Plaintiff's motion for a preliminary injunction and a temporary restraining order and motions to dismiss filed on behalf of the City and Campagnari, which motions have been referred to me for report and recommendation. 28 U.S.C. §636(B)(1)(b). For the reasons set forth below, I recommend that the City's and Campagnari's motions to dismiss be GRANTED; and that Plaintiff's motion for equitable relief be DENIED.

    II.    RELEVANT PROCEDURAL AND FACTUAL BACKGROUND[2]

    a.  Procedural Background

Plaintiff filed his complaint on March 25, 2016, accompanied by a motion for preliminary injunctive relief and a temporary restraining order (Dkt. Nos. 1, 3). According to the docket, Campagnari was served on June 23, 2016 and the City was served on June 24, 2016 (Dkt. Nos. 11, 12). Each of these defendants timely filed a motion to dismiss (Dkt. Nos. 17, 18). After repeatedly extending the time for Plaintiff to file an opposition to the motions to dismiss (Dkt. Nos. 26, 31, 36, 38), the court held a hearing on the pending motions on November 10, 2016, and, at the conclusion of the hearing, took the motions under advisement (Dkt. No. 45).

---

[2] The facts stated herein are drawn from Plaintiff's complaint (Dkt. No. 1) and from Housing Court orders and rulings submitted by the City in support of its motion to dismiss, supplemented (in Appendix 1, attached hereto) by Housing Court orders and rulings related to review of the receiver's progress and the receiver's sale of the property at issue. *See, e.g., Xiao Wei Yang Catering Linkage in Inner Mongolia Co., LTD v. Inner Mongolia Xiao Wei Yang USA, Inc.*, 150 F. Supp. 3d 71, 76 (D. Mass. 2015) (a court considering a motion to dismiss properly may consider facts and documents that are official public records, including court records) (citing *Alt. Energy, Inc. v. St. Paul Fire and Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2015)); *see also Buba v. Deutsche Bank Nat'l Tr. Co. Ams.*, Civil Action No. 16-10421-PBS, 2016 WL 2626861, at *3 (D. Mass. May 6, 2016) (matters of public record that a court may rely on in ruling on a motion to dismiss include documents from prior state court adjudications) (citing *Giragosian v. Ryan*, 547 F.3d 59, 65 (1st Cir. 2008)).

According to the docket, M.J.A. Enterprise and NJP Enterprise LLC were served on June 24, 2016 and, so far as appears, have not answered or otherwise responded to the complaint (Dkt. Nos. 14, 15).

  b.  <u>Relevant Factual Background</u>

On or around April 27, 2012, the Housing Court issued an emergency administrative search warrant with respect to the property at 155-157 Oak Grove Avenue (Dkt. No. 19-2 at 3). Several days later, a Springfield housing inspector executed the administrative warrant. On the basis of his inspection, he recommended immediate condemnation of the property based on fire hazards, the condition of the building, and debris on the property (*id.*). On May 2, 2012, the housing inspector posted the dwelling with a notice of condemnation and an order to vacate (*id.* at 4). On May 3, 2012, the Housing Court held an emergency hearing on the City's motion for access to 155-157 Oak Grove Avenue to remove kerosene tanks from the basement. Plaintiff was present with counsel. The court allowed the City's motion to remove the tanks (or have Plaintiff remove them if he timely contracted with an entity properly licensed to do so) (*id.* at 1-2).

Between May 25, 2012 and April 9, 2013, Plaintiff, who continued to be represented by counsel, entered into a series of agreements with the Housing Court to remedy the hazardous and blighted condition of the property. The City repeatedly re-inspected the property (when allowed access by Gedeon) and found that the hazardous and blighted condition of the property had not been remediated (*id.* at 4-6). Approximately a year later, following a March 26, 2013 hearing, at which Gedeon was present with counsel and testified, and during which a housing code inspector and a building inspector also testified, the Housing Court found that the current state of the property rendered it unsafe for emergency personnel to enter, that it was a fire risk and a blight

3

on the neighborhood, and that Gedeon was either unable or unwilling to bring the property into code compliance (*id.* at 6). In its April 9, 2013 Order, the Housing Court appointed MJA Business Enterprises, Inc. ("MJA") as receiver (*id.* at 7). Following an April 29, 2013 hearing, at which Gedeon appeared with counsel, Gedeon was given an additional week to remove any items from the property that he did not want discarded (*id.* at 17).

Some two years later, following a May 12, 2015 hearing, Campagnari Construction, LLC ("Campagnari") was appointed as a successor receiver with all of the duties and powers previously granted to MJA, MJA was discharged as a receiver, and the court ordered that Campagnari's lien would be superior to any lien of MJA (*id.* at 21). Plaintiff's subsequent motion for reconsideration of the appointment of a successor receiver as denied after hearing (Appendix 1 at 1). In at least August, October and December 2015, the Housing Court held hearings on Campagnari's progress and funds expended as receiver (*id.* at 2-16). Plaintiff was authorized by the Housing Court to attend a final inspection of the property on March 2, 2016, in anticipation of an evidentiary hearing on Campagnari's request to establish its lien (Dkt. No. 19-2 at 25). On March 18, 2016, after the evidentiary hearing was held, the Housing Court approved Campagnari's lien in the amount of $138,531.50, which lien the Housing Court authorized to be recorded in the Hampden County Registry of Deeds (*id.*). On May 6, 2016, after hearing, the Housing Court approved the sale of 155-157 Oak Grove Avenue to Campagnari as higher bidder at auction (Appendix 1 at 17-18). On May 18, 2016, Campagnari recorded a Receiver's Deed transferring ownership of 155-157 Oak Grove Avenue from Andrea Gedeon to Campagnari (Dkt. No. 19-2 at 27).

Plaintiff's complaint states no causes of action, but Plaintiff invokes 42 U.S.C. § 1983 as the basis for subject matter jurisdiction (Dkt. No. 1 at 1),[3] and alleges that the City deprived him of his rights to equal protection and due process by moving for appointment of a receiver for 155-157 Oak Grove Avenue based on false and misleading information in retaliation against him (Dkt. No. 1 at 1-2; Dkt. No. 39 at 9). He further alleges that, as receiver, Campagnari inflated the costs of rehabilitating the property so that it would be able to foreclose on, and obtain title to, the property (Dkt. No. 1-1 at 2).

III. DISCUSSION

1. Standard of Review

To survive a motion to dismiss, a "complaint must contain enough factual material to raise a right to relief above the speculative level … and state a facially plausible legal claim," *Guerra-Delgado v. Popular, Inc.*, 774 F.3d 776, 780 (1st Cir. 2014) (quoting *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 12 (1st Cir. 2011)), "accept[ing] as true well-pleaded facts in the complaint and draw[ing] all reasonable inferences in the pleader's favor." *Id.* (citing *Tasker v. DHL Rev. Sav. Plan*, 621 F.3d 34, 38 (1st Cir. 2010)). In resolving a motion to dismiss, the court employs a two-step approach. *See Medina-Velázquez v. Hernández-Gregorat*, 767 F.3d 103, 108 (1st Cir. 2014) (citing *Ocasio-Hernández*, 640 F.3d at 12).

> First, [the court] "must separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal

---

[3] On or around September 16, 2016, Plaintiff filed a document in this case captioned "Plaintiff's Complaint" (Dkt. No. 39-1 at 14-15). No defendant or defendants are named in this document, which purports to assert claims of assault, trespass to chattels, malicious abuse of process, and negligent and intentional infliction of emotional distress. Plaintiff never moved for leave to file an amended complaint and no such leave was granted. A self-represented party like Plaintiff is nonetheless obligated to comply with the court's procedural rules. *See, e.g., Lefebvre v. Comm'r of Internal Revenue*, 830 F.3d 417, 419 (1st Cir. 1987) (party who elects to proceed *pro se* must comply with all applicable procedural and substantive rules). Accordingly, the court treats the complaint Plaintiff filed to initiate this case as the operative complaint.

> allegations (which need not be credited)." *A.G. ex. rel. Maddox v. Elsevier, Inc.*, 732 F.3d 77, 80 (1st Cir. 2013) (internal quotation marks omitted). Second, [the court] "must determine whether the remaining factual content allows a reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (internal quotation marks omitted).

*Medina-Velázquez*, 767 F.3d at 108. While "a complaint need not plead facts sufficient to make out a prima facie case or allege all facts necessary to succeed at trial," *id*. (citing *Carrero-Ojeda v. Autoridad de Energía Eléctrica*, 755 F.3d 711, 717-18 (1st Cir. 2014)), the elements of a prima facie case "form[] 'part of the background against which a plausibility determination should be made.'" *Id*. (quoting *Rodríguez-Reyes v. Molina-Rodríguez*, 711 F.3d 49, 54 (1st Cir. 2013)). "An analysis of plausibility is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id*. at 109 (quoting *Grajales v. P.R. Ports Auth.*, 682 F.3d 40, 44 (1st Cir. 2012)). That said, "the court may not disregard properly pled factual allegations, 'even if it strikes a savvy judge that actual proof of those facts is improbable.'" *Ocasio-Hernández*, 640 F.3d at 12 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "[A] court [may not] attempt to forecast a plaintiff's likelihood of success on the merits; 'a well-pleaded complaint may proceed even if … a recovery is very remote and unlikely.'" *Id*. at 12-13 (quoting *Twombly*, 550 U.S. at 556). Notwithstanding the court's obligation to credit properly pled allegations, "[t]o the extent [a plaintiff's] allegations of what happened in [prior state court] proceedings are at odds with the records, the court is not required to accept the [plaintiff's] version." *Katz v. McVeigh*, 931 F. Supp. 2d 311, 320 (D.N.H. 2013) (citing *Rederford v. U.S. Airways, Inc.*, 589 F.3d 30, 35 n.4 (1st Cir. 2009) (even when ruling on motions to dismiss, courts need not accept facts which have been conclusively contradicted)).

    2. <u>Section 1983 – City of Springfield</u>

"To sustain an action under 42 U.S.C. § 1983, [Plaintiff] must show both "'(i) that the conduct complained of has been committed under color of state law, and (ii) that this conduct worked a denial of rights secured by the Constitution or laws of the United States.'" *Smith v. City of Boston*, No. Civ.A. 03-10062-DPW, 2004 WL 1572626, at *3 (D. Mass. July 13, 2004) (quoting *Chongris v. Bd. of Appeals*, 811 F.2d 36, 40 (1st Cir. 1987)). It is undisputed that the first prong is met in this case: while 42 U.S.C. § 1983 applies to "persons," it is well-settled that the statute applies to municipalities like Springfield when it is alleged that an act or acts committed pursuant to a municipal policy or custom "caused a constitutional tort." *Id.* Accordingly, the question before the court is whether Plaintiff has alleged facts to support a claim that the City deprived Plaintiff of constitutionally protected rights to equal protection and due process of law. *See id.* These questions are addressed below.

  a. <u>Selective or retaliatory code enforcement</u>

Reading the complaint very generously, *see, e.g, Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (documents filed *pro se* must be liberally construed, and a *pro se* complaint held to standards less stringent than those governing pleadings drafted by lawyers), Plaintiff alleges that Springfield sought appointment of a receiver during the code enforcement proceedings concerning 155-157 Oak Grove Avenue in retaliation because Plaintiff caused a deposition notice to be served on the City in an unrelated case (Dkt. No. 39 at 8). Liability on a claim for code enforcement based on improper motives depends on proof that: "'(1) the person, compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as . . . intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" *Rubinovitz v. Rogato*, 60 F.3d 906, 910 (1st Cir. 1995) (quoting *Yerardi's Moody St. Rest. & Lounge, Inc. v. Bd. of*

7

*Selectmen*, 878 F.2d 16, 21 (1st Cir. 1989)); *see also MacFarlane v. Town of East Bridgewater*, 110 F. Supp. 3d 310, 323 (D. Mass. 2015) (citing *Cordi-Allen v. Conlon*, 494 F.3d 245, 250 (1st Cir. 2007)) (to state "class of one" selective code enforcement claim, a plaintiff must allege that he has been intentionally treated differently from similarly situated others, and that there was no rational basis for the different treatment).[4]

Code enforcement proceedings in connection with the property were initiated in April 2012. Plaintiff's counsel served a deposition notice on the City in an unrelated case on February 14, 2013 (Dkt. No. 39 at 8). Approximately one month after Plaintiff's counsel served the deposition notice on Lisa DeSousa, the City's attorney, the City moved for the appointment of a receiver for 155-157 Oak Grove Avenue (Dkt. No. 19-2 at 3-15). The mere fact that one event followed another is not sufficient to make out a causal link, *cf. Rhodes v. JPMorgan Chase & Co.*, 562 F. Supp. 2d 186, 192 n.19 (D. Mass. 2008) (retaliation claim by employee), and, in the instant case, no such link reasonably can be inferred. The court's order appointing a receiver came after close to a year of promises by Gedeon to the court that he would clean up the property, followed by inspections showing that he had failed to live up to his most recent undertaking (Dkt No. 19-2 at 4-6). A neutral court made the decision that, by March 2013, the course of proceedings showed that Plaintiff was either unwilling or unable to clean up and make his property safe (*id.* at 6). Further, Plaintiff has failed to include in his complaint any allegations from which it could be inferred that Springfield was aware of and tolerated blighted and hazardous conditions on Springfield properties other than those belonging to Plaintiff. *See*

---

[4] The court assumes without deciding that Defendant's decision to file a code enforcement petition is sufficient to establish a causal connection between a municipal policy or custom and an alleged constitutional violation. *See Wright v. Town of Southbridge*, Civil Action No. 07-40305-FDS, 2009 WL 415506, at *8 (D. Mass. Jan. 15, 2009).

*Medina-Velázquez*, 767 F.3d at 108; *McFarlane*, 110 F. Supp. 3d at 323.  Thus, Plaintiff has failed to allege that he was treated differently than others similarly situated to himself.

As to the second element, in view of the record of prior state court proceedings, Plaintiff's complaint does not state facts that could establish the lack of a rational basis for the code enforcement proceedings the City initiated in connection with 155-157 Oak Grove Avenue. Housing Court documents show that Springfield initiated the code enforcement proceeding in or around March 2012 (Dkt. No. 19-2 at 3).  Following the filing of the code enforcement petition, the Housing Court convened multiple hearings, including evidentiary hearings, related to conditions at 155-157 Oak Grove Avenue, and made repeated findings that conditions had not improved.[5]  On March 26, 2013, after an evidentiary hearing at which Gedeon appeared with counsel and testified, the Housing Court concluded that "Mr. Gedeon's actions relative to [155-157 Oak Grove Avenue] . . . demonstrates (sic) that Mr. Gedeon is either unwilling or unable to bring the property into code compliance" and appointed a receiver (*id.* at 6-7).  Even if Plaintiff had adequately alleged selective enforcement, which he has not, he has not adequately alleged, on this record, that Springfield's code enforcement action – and the resulting appointment of a receiver – lacked a rational basis.  *See Smith*, 2004 WL 1572626, at *5.  Because Plaintiff has failed adequately to allege a violation of his right to Equal Protection, the court recommends that so much of Plaintiff's cause of action under § 1983 as asserts this claim be dismissed with prejudice.

  b. <u>Violation of Right to Due Process</u>

---

[5] That conditions were dangerous is confirmed by photographs filed by Plaintiff in support of his opposition to the defendants' motions to dismiss (Dkt. No. 39-1 at 1-9).

"'[D]ue process is flexible and calls for such protections as the particular situation demands.'" *Aponte-Rosario*, 617 F.3d at 9 (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)). "Despite this flexibility, it is well-settled that the essential requirements of procedural due process include adequate notice and an opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id*. (quoting *Amsden v. Moran*, 904 F.2d 748, 753 (1st Cir. 1990) (citation and internal quotation marks omitted)). "As the rubric itself implies, 'procedural due process' is simply 'a guarantee of fair procedure.' . . . . When a procedural due process claim is advanced, the proper focus must be on the manner in which the state has acted: 'how and when' the alleged deprivation was effected. Whether the deprivation . . . was itself erroneous is beside the procedural due process point." *Amsden*, 904 F.2d at 753 (internal citations omitted).

In this case, Plaintiff's complaint contains no allegations that the City failed or refused to provide him with notice or an opportunity to be heard. The materials properly before this court show that the Housing Court conducted repeated hearings on the City's code enforcement petition. Housing Court records show that Plaintiff attended these hearings, with, in many instances, his attorney. The Housing Court issued written orders following these hearings. Because Plaintiff's complaint contains no allegations of any shortcomings in the provision of notice or an opportunity to be heard, the court recommends that so much of Plaintiff's cause of action under § 1983 as asserts a claim for denial of due process be dismissed with prejudice. *See Roman-Oliveras v. Puerto Rico Elec. Power Auth.*, 655 F.3d 43, 47-48 (1st Cir. 2011) (affirming the district court's dismissal of the plaintiff's § 1983 claim on a motion to dismiss where the complaint contained no allegations regarding either lack of notice or the absence of a meaningful opportunity to be heard).

    3.  <u>Section 1983 – Claim Against Receiver</u>

Campagnari moved for dismissal of the claims against it on the basis that the complaint failed to state a claim on which relief could be granted (Dkt. No. 17). It filed no memorandum in support of its motion, and, at the hearing, adopted the arguments advanced by the City. Those arguments, however, do not respond to the claim Plaintiff apparently seeks to assert against Campagnari, which is that the receiver deliberately inflated the costs of repairs to 155-157 Oak Grove Avenue so as to be able to purchase the property at auction. The court nonetheless recommends, on the basis of its obligation to screen cases pursuant to 28 U.S.C. § 1915A,[6] that the court grant Campagnari's motion and dismiss Plaintiff's claims against Campagnari on the basis of the quasi-judicial immunity to which a receiver, appointed by a court and operating under its supervision, is entitled.

"The doctrine of quasi-judicial immunity provides absolute immunity for those who perform tasks that are inextricably intertwined with the judicial function." *Nystedt v. Nigro*, 700 F.3d 25, 30 (1st Cir. 2012). "[A] receiver who faithfully and carefully carries out the orders of [its] appointing judge must share the judge's absolute immunity." *Kermit Constr. Corp. v. Banco Credito Y Ahorro Ponceno*, 547 F.2d 1, 3 (1st Cir. 1976). "[I]n order to end the harassment [of vexatious litigation] as quickly as possible in appropriate cases, the burden of pleading and of showing the absence of privilege falls on the plaintiff." *Id.* Plaintiff's pleadings and supplemental submissions fail to establish an absence of privilege for Campagnari.

There are two recognized exceptions to the principle of quasi-judicial immunity.

---

[6] Section 1915(e)(2) provides, in pertinent part, as to cases in which, as in this case, a plaintiff is permitted to proceed *in forma pauperis*, that the court shall dismiss the case at any time if the court determines that – [the complaint] . . . (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." *See also Nystedt v. Nigro*, 700 F.3d 25, 30 (1st Cir. 2012) ("[T]he policy of the law favors the resolution of immunity defenses as early in a lawsuit as may be practicable.").

> The first of these exceptions relates to non-judicial acts, *see, e.g., Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 435-36 . . . (1993); *Cok v. Cosentino*, 876 F.2d 1, 3 (1989) (1st Cir. 1989); the second relates to acts which, "though judicial in nature," are "taken in the complete absence of all jurisdiction." *Mireles v. Waco*, 502 U.S. 9, 11-12 . . . (1991).

*Nystedt*, 700 F.3d at 31.

"Judicial acts are those that are 'intimately associated' with the judicial function." *Id.* (citing *Burns v. Reed*, 500 U.S. 478, 486 (1991)). The receiver appointed to bring the property at 155-157 Oak Grove Avenue into code compliance was engaged in a so-called judicial act. "Judicial immunity extends . . . to those who carry out the orders of judges." *Slotnick v. Garfinkle*, 632 F.2d 163, 166 (1st Cir. 1980). After hearing, the Housing Court found that the property at 155-157 Oak Grove Avenue was a fire risk, a blight on the neighborhood, unsafe, and not in compliance with the State Sanitary and Building Codes (Dkt. No. 19-2 at 6). Campagnari was appointed by an Associate Justice of the Housing Court to act as receiver of the property (Dk. No. 19-2 at 21), and granted extensive authority and duties in connection with that appointment, including dismantling scaffolding around the property; cleaning the property of all debris and trash; inspecting the property to determine what repairs needed to be made to correct violations of the State Sanitary Code and applicable fire safety, electrical and plumbing codes; and performing or causing to be performed the repairs necessary to eliminate code violations (*id.* at 7-8). In developing a plan for, and carrying out, repairs at 155-157 Oak Grove Avenue, Campagnari was "carrying out the official directives of a judge," *Slotnick*, 632 F.2d at 166, who had concluded that repairs were necessary to eliminate violations that might endanger the health or safety of future tenants or the public, and ordered that such repairs be performed (Dkt. No. 19-2 at 8). *See Kermit*, 547 F.2d at 3 (court-appointed receiver entitled to absolute quasi-judicial immunity); *see also Cok*, 876 F.2d at 3 (individuals appointed by a court as conservator of assets

and partition sales commissioner in connection with divorce proceeding entitled to absolute quasi-judicial immunity because they were an integral part of the judicial process).

Plaintiff's speculative and conclusory allegation that Campagnari inflated the costs of rehabilitating the property to increase the amount of its lien would not, even if credibly pled, suffice to strip Campagnari of its immunity. "The fact that a court-appointed [receiver] performs a judicial function in an imperfect (or even unethical) way does not, by itself, dissolve his quasi-judicial immunity." *Nystedt*, 700 F.3d at 31; *see also Cok*, 876 F.2d at 3 (allegations of malice, bad faith, or conspiracy will not circumvent absolute quasi-judicial immunity).

Nor do the pleadings disclose any basis for a contention that Campagnari's actions, while judicial in nature, were taken in the absence of all jurisdiction. The Housing Court has jurisdiction over code enforcement proceedings, and statutory authority to appoint a receiver where violations of the State Sanitary Code will not be promptly remedied unless a receiver is appointed, and the court finds that such an appointment is in the best interests of future occupants of the property and public safety. *See* Mass. Gen. Laws ch. 111, § 127*I*. Thus, the Housing Court had a well-established jurisdictional basis for the appointment of Campagnari as receiver. Campagnari regularly filed reports on the progress of the receivership that were reviewed by the court (Appendix 1 at 2-16). Plaintiff's claim that the property at 155-157 Oak Grove Avenue was not in a condition that justified appointment of a receiver is unavailing. First, the court is not required to accept this claim at face value, where it is wildly at odds with the state court records of the code enforcement proceedings. *See Katz*, 931 F. Supp. 2d at 320. Second, the United States Supreme Court "has squarely held that absolute judicial immunity is ineffaceable even in the presence of 'grave procedural errors.'" *Nystedt*, 700 F.3d at 32 (quoting *Stump v. Sparkman*, 435 U.S. 349, 359 (1978)) (rejecting arguments that absence of need for

13

discovery master and excess costs of discovery master's services stripped discovery master of absolute quasi-judicial immunity).

Finally, there is a fundamental flaw in Plaintiff's attempt to attack the receiver's work in this court which precludes an award of relief by this court:

> His claims amount to nothing more than claims of error that could, and should, [and were,] addressed in the [code enforcement proceeding] itself. After all, "[w]ere collateral and retrospective attacks on technical defects of court appointments permitted, the court's work in an already difficult litigation field would often be undone, with consequent uncertainty, delay and frustration." *Brown [v. Newberger]*, 291 F.3d [89,] 94 [(1st Cir. 2002)]. The plaintiff could, for example . . . have raised the points on appeal. After all, one of the primary purposes of judicial immunity is to "establish appellate procedures as the standard system for correcting judicial error." *Forrester [v. White]*, 484 U.S. [219,] 225 [(1988)].

*Nystedt*, 700 F.3d at 32-33. Plaintiff's objections to the appointment of a receiver, to allowance of the receivers' accounts, and to the Housing Court's allowance of Campagnari's motion to establish its lien were heard and ruled on the Housing Court, and those rulings could have been challenged on appeal in the state court system. They should not be open to collateral attack in this court.

For the foregoing reasons, the court recommends that Plaintiff's claims against Campagnari be dismissed with prejudice based on the absolute quasi-judicial immunity that it enjoys by virtue of its role as receiver.

4. Plaintiff's Motion for Equitable Relief

When filed, Plaintiff's complaint was accompanied by a two-page motion for a "(a) Preliminary Injunction (b) Temporary Restraining order" (Dkt. No. 3). The nature of the relief sought and the basis for the relief were not stated. A fair inference from the timing of the filing – March 25, 2016 – is that Plaintiff's request for injunctive relief was triggered by the Housing Court's March 18, 2016 Order establishing Campagnari's $138,531.50 lien against 155-157 Oak

14

Grove Avenue, and was an attempt to stave off the receiver's sale of the property to recoup its lien (Dkt. No. 19-2 at 26). The court recommends that Plaintiff's motion for preliminary injunctive relief be denied because it is moot and, in any event, Plaintiff has not met the demanding standard for an award of injunctive relief.

    a. <u>Plaintiff's Motion for Preliminary Injunctive Relief is Moot</u>

Assuming that Plaintiff's motion for preliminary injunctive relief was aimed at preventing a receiver's sale of 155-157 Oak Grove Avenue, the motion is moot. Plaintiff served his complaint on Campagnari on June 23, 2016; he served the City on June 24, 2016 (Dkt. Nos. 11, 12). The receiver conducted an auction of the property on April 20, 2016; the Housing Court approved sale of the property to Campagnari as the highest bidder on May 6, 2016 (Appendix 1 at 17-18). The Receiver's Deed was recorded at the Hampden County Registry of Deeds on May 18, 2016 (Dkt. No 19-2 at 27). "Therefore, the injunctive relief [Plaintiff] is seeking, i.e, a Court order precluding [the sale of 155-157 Oak Grove Avenue], is no longer feasible." *Schofield v. Clark*, 686 F. Supp. 2d 124, 126-27 (D. Mass. 2010). Accordingly, the court recommends that Plaintiff's motion for preliminary injunctive relief be denied as moot.

    b. <u>Plaintiff Has Not Met the Standard for Preliminary Injunctive Relief</u>

"To justify the extraordinary relief of a preliminary injunction [or a temporary restraining order], plaintiff bears the burden of establishing that an injunction is necessary to prevent irreparable harm and to preserve the status quo, to enable a meaningful disposition upon full adjudication of his claims." *Carey v. Comm'r, N.H. Dept. of Corrs.*, Civil No. 06-cv-479-PB, 2007 WL 2898713, at *1 (D.N.H. Sept. 28, 2007) (citing *Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*, 102 F.3d 12, 18 (1st Cir. 1996); *CMM Cable Rep. v. Ocean Coast Props.*, 48 F.3d 618, 620-21 (1st Cir. 1995); *Acierno v. New Castle County*, 40 F.3d 645, 653 (3d Cir. 1994)).

> The preliminary injunction standard is familiar. Before granting this type of relief, a nisi prius court must consider (1) the likelihood of the movant's success on the merits; (2) the anticipated incidence of irreparable harm if the injunction is denied; (3) the balance of the relevant equities (i.e., the hardship that will befall the nonmovant if the injunction issues contrasted with the hardship that will befall the movant if the injunction does not issue); and (4) the impact, if any, of the court's action on the public interest.

*Borinquen Biscuit Corp. v. M.V. Trading Corp.*, 443 F.3d 112, 115 (1st Cir. 2006). "The *sine qua non* of the [four factor] formulation is whether the plaintiff[] [is] likely to succeed on the merits." *Weaver v. Henderson*, 984 F.2d 11, 12 (1st Cir. 1993); *see also Shea v. Ditech Fin., LLC*, Civil Action No. 16-11488-NMG, 2016 WL 5334654, at *2 (D. Mass. Sept. 22, 2016) (of the four factors, likelihood of success on the merits normally weighs most heavily); *Rice v. Wells Fargo Bank, N.A.*, 2 F. Supp. 3d. 25, 32 (D. Mass. 2014) ("A movant's failure to establish a likelihood of success on the merits is a sufficient reason to deny a motion for preliminary injunction.").

    a. <u>Likelihood of Success on the Merits</u>

For the reasons set forth herein, Plaintiff's complaint fails to state claims on which he is entitled to relief. He has, by definition, therefore failed to establish the likelihood that he will prevail on the claims he has asserted against the City and Campagnari. *See Dyer v. U.S. Bank*, CIVIL ACTION NO. 15-12820-MPK, 2015 WL 4364141, at *6 (D. Mass. July 16, 2015). Plaintiff's failure to establish a likelihood of success on the merits is, on its own, a sufficient basis to warrant denial of his motion for preliminary injunctive relief.

    b. <u>Risk of Irreparable Harm</u>

The First Circuit has held that such harm should be measured

> on a sliding scale, working in conjunction with a moving party's likelihood of success on the merits, such that the strength of the showing necessary on irreparable harm depends in part on the degree of likelihood of success shown.

*Braintree Labs., Inc. v. Citigroup Global Markets, Inc.*, 622 F.3d 36, 42-43 (1st Cir. 2010). Here, where Plaintiff was unable or unwilling to address code violations and other problems on the property, despite being given numerous opportunities to do so, his loss of the property was inevitable. Temporary injunctive relief might delay, but would not prevent, this ultimate outcome. Preliminary injunctive relief would not prevent the alleged harm that Plaintiff sought to forestall. *See Dyer*, 2015 WL 4364141, at *6.

    c.  <u>Balance of Hardships</u>

In contrast to the situation in many foreclosure sales, the property at 155-156 Oak Grove Avenue, while a potential source of income for Plaintiff, was not his home. His neglect, and the condition of the property, was shown in the code enforcement proceedings to be damaging to the neighborhood. The receiver performed its work in reliance on payment for the services it was providing to the court and the City, and was entitled to recoup its costs. The balance of harms, if anything, cuts against injunctive relief. *See id.*

    d.  <u>Public Interest</u>

A citizen's possessory interest in real property is a significant interest, but the public has a countervailing interest in the City's ability to enforce duly enacted sanitary and building codes, so that neighborhoods are not burdened with the myriad problems caused, or contributed to, by blighted property, and rehabilitated property may be returned to the tax rolls. In this case, at least, denial of preliminary injunctive relief is in the public interest.

In summary, the court recommends that Plaintiff's motion for preliminary injunctive relief be denied because it is moot, and because he has not met his burden of showing that he is entitled to this extraordinary form of relief.

    IV.  <u>CONCLUSION</u>

For the foregoing reasons, the court recommends that the motions to dismiss by the City of Springfield and Campagnari Construction, Inc. be GRANTED, and that Plaintiff's motion for preliminary injunctive relief be DENIED.[7]  The court further recommends that the Clerk be directed to enter default against M.J.A. Enterprise and NJP Enterprise LLC, as the docket shows that these two parties were served and they have not pled or otherwise defended this matter.  *See* Fed. R. Civ. P. 55(a).

Dated: February 24, 2017                         /s/ Katherine Robertson
                                                 KATHERINE ROBERTSON
                                                 UNITED STATES MAGISTRATE JUDGE

---

[7] The parties are advised that under the provisions of Fed. R. Civ. P. 72(b) or Fed. R. Crim. P. 59(b), any party who objects to these findings and recommendations must file a written objection with the Clerk of this Court **within fourteen (14) days** of the party's receipt of this Report and Recommendation.  The written objection must specifically identify the portion of the proposed findings or recommendations to which objection is made and the basis for such objection.  The parties are further advised that failure to comply with this rule shall preclude further appellate review by the Court of Appeals of the District Court order entered pursuant to this Report and Recommendation.  *See Keating v. Sec'y of Health & Human Servs.*, 848 F.2d 271, 275 (1st Cir. 1988); *United States v. Valencia-Copete*, 792 F.2d 4, 6 (1st Cir. 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *United States v. Vega*, 678 F.2d 376, 378-379 (1st Cir. 1982); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603, 604 (1st Cir. 1980).  *See also Thomas v. Arn*, 474 U.S. 140, 154-155 (1985).  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.