UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MICHAEL GEDEON,                        )
    Plaintiff                      )
                                   )        16-cv-30054-MGM
v.                                     )
                                   )
CITY OF SPRINGFIELD, et al.            )
    Defendants.                    )

REPORT AND RECOMMENDATION REGARDING PLAINTIFF'S MOTION TO ENTER
JUDGMENT IN THE AMOUNT CLAIMED ON THE STATEMENT OF DAMAGES
(Dkt. No. 89)

ROBERTSON, U.S.M.J.

I.    INTRODUCTION

On or around May 3, 2012, the City of Springfield filed an emergency motion in the

Hampden County Housing Court ("Housing Court") for access to property located at 155-157

Oak Grove Avenue owned by plaintiff Michael Gedeon ("Plaintiff" or "Gedeon") and Andrea

Gedeon. Following a series of hearings in the Housing Court, certain details of which are set

forth below, the Housing Court appointed a receiver to remedy conditions on the property. A

successor receiver was appointed and eventually authorized by the Housing Court to record a

lien in excess of $138,000 against the property, which sold at auction to the successor receiver.

Plaintiff, who is self-represented,[1] filed two lawsuits in this court based on these events. The

defendants named in the instant lawsuit were the City of Springfield ("City"); M.J.A. Business

Enterprise Inc. ("MJABE"); M.J.A. Enterprise ("MJA");[2] NJP Enterprise LLC ("NJP"); and

Campagnari Construction, LLC ("Campagnari"), the successor receiver. The court granted

---

[1] Pursuant to an order entered on May 5, 2016, Plaintiff is proceeding *in forma pauperis* in this
action (Dkt. No. 9).

[2] It is not clear from the record that MJA exists as an entity separate from MJABE. Because
Plaintiff is not entitled to relief from MJA, the court need not resolve this question.

motions to dismiss filed by the City and Campagnari (Dkt. No. 51).  The court declined to enter

default against MJABE, the initial receiver, because, according to the docket, Plaintiff never

filed a proper return of service as to MJABE.  On February 19, 2019, Plaintiff filed his Motion to

Enter Judgment in the Amount Claimed on the Statement of Damages seeking entry of a default

judgment against MJA and NJP in the amount of at least $350,000 (Dkt. Nos. 1, 89, 90), which

motion was referred to this court for Report and Recommendation (Dkt. No. 91).  *See* 28 U.S.C.

§ 636(B)(1)(b).

    For the reasons set forth below, I recommend that the court enter an order denying

Plaintiff's motion to enter a default judgment against either MJA or NJP.

      II.    ADDITIONAL PROCEDURAL AND FACTUAL BACKGROUND[3]

      a.  Travels of the Case

    Plaintiff filed his complaint on March 25, 2016, accompanied by a motion for

preliminary injunctive relief and a temporary restraining order (Dkt. Nos. 1, 3).  Plaintiff filed

returns of service for MJA and NJP on July 14, 2016, purporting to show that these entities were

served on June 24, 2016 (Dkt. Nos. 14, 15).  He filed an unexecuted return of service for MJABE

on July 14, 2016 (Dkt. No. 13).  On August 9, 2016, the court granted Plaintiff's motion for an

_____

[3] The facts stated herein are drawn from Plaintiff's complaint and supporting affidavit (Dkt. Nos. 1, 1-1) and from Housing Court orders and rulings submitted by the City in support of its motion to dismiss, supplemented (in Dkt. No. 47-1) by additional Housing Court orders and rulings related to review of the successor receiver's progress and the successor receiver's sale of the property at issue.  *See, e.g., Xiao Wei Yang Catering Linkage in Inner Mongolia Co., LTD v. Inner Mongolia Xiao Wei Yang USA, Inc.*, 150 F. Supp. 3d 71, 76 (D. Mass. 2015) (a court considering a motion to dismiss properly may consider facts and documents that are official public records, including court records) (citing *Alt. Energy, Inc. v. St. Paul Fire and Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2015)); *see also Buba v. Deutsche Bank Nat'l Tr. Co. Ams.*, Civil Action No. 16-10421-PBS, 2016 WL 2626861, at *3 (D. Mass. May 6, 2016) (matters of public record that a court may rely on in ruling on a motion to dismiss include documents from prior state court adjudications) (citing *Giragosian v. Ryan*, 547 F.3d 59, 65 (1st Cir. 2008)).

extension of time to serve defendants MJABE, MJA, and NJP.  The docket does not show further service on any of these entities, none of which filed an answer to the complaint.  In reliance on docket entries 14 and 15, the Clerk's Office entered default as to MJA and NJP on May 10, 2017 (Dkt. No. 53).

b. Facts

On or around April 27, 2012, the Housing Court issued an emergency administrative search warrant with respect to the property at 155-157 Oak Grove Avenue (Dkt. No. 19-2 at 3). Several days later, a Springfield housing inspector executed the administrative warrant.  Based on his inspection, he recommended immediate condemnation of the property based on fire hazards, the condition of the building, and debris on the property (*id.*).  On May 2, 2012, the housing inspector posted the dwelling with a notice of condemnation and an order to vacate (*id.* at 4).  On May 3, 2012, the Housing Court held an emergency hearing on the City's motion for access to 155-157 Oak Grove Avenue to remove kerosene tanks from the basement.  Plaintiff was present with counsel.  The court allowed the City's motion to remove the tanks or have Plaintiff remove them if he timely contracted with an entity properly licensed to do so (*id.* at 1-2).

Between May 25, 2012 and April 9, 2013, Plaintiff, who continued to be represented by counsel, entered into a series of agreements with the Housing Court to remedy the hazardous and blighted condition of the property.  The City repeatedly re-inspected the property (when allowed access by Gedeon) and found that the hazardous and blighted condition of the property had not been addressed (*id.* at 4-6).  Approximately a year later, following a March 26, 2013 evidentiary hearing, at which Gedeon was present with counsel and testified, and during which a housing code inspector and a building inspector also testified, the Housing Court found that the current

state of the property rendered it unsafe for emergency personnel to enter, that it was a fire risk

and a blight on the neighborhood, and that Gedeon was either unable or unwilling to bring the

property into code compliance (*id.* at 6).  In its April 9, 2013 Order, the Housing Court appointed

MJABE as receiver (*id.* at 7).  Plaintiff was given a week to remove personal property from the

premises (*id.*).  Following an April 29, 2013 hearing, at which Gedeon appeared with counsel,

Gedeon was given an additional week to remove any items from the property that he did not

want discarded (*id.* at 17).  Some two years later, following a May 12, 2015 hearing, Campagnari

was appointed as a successor receiver with all of the duties and powers previously granted to

MJABE, MJABE was discharged as a receiver, and the Housing Court ordered that

Campagnari's lien would be superior to any lien of MJABE (*id.* at 21).  Plaintiff's motion for

reconsideration of the appointment of a successor receiver was denied after hearing (Dkt. No. 47-

1 at 2).  Ultimately, under the Housing Court's supervision, an auction was conducted pursuant

to the court's order on Campagnari's motion to foreclose and the property was sold to

Campagnari, the successor receiver, as the highest bidder (*id.* at 18-19).

     III.    <span style="text-decoration: underline;">ANALYSIS</span>

     a.  <span style="text-decoration: underline;">Principles Applicable to Default Judgments</span>

     On a motion for default judgment, the court considers "all well-pleaded factual

allegations as true, to determine whether [the complaint] alleges a cause of action."  *Ramos-*

*Falcon v. Autoridad de Energia Electrica*, 301 F.3d 1, 2 (1st Cir. 2002); *New England*

*Carpenters Cent. Collection Agency v. Whipple Constr., Inc.*, Civil Action No. 15-cv-13721-

ADB, 2019 WL 3573483, at *3 (D. Mass. Aug. 6, 2019).  "Where the complaint contains facts

sufficient to state a claim upon which relief can be granted, the defendant's liability is

established at the time of default."  *Whipple Constr., Inc.*, 2019 WL 3573483, at *3 (emphasis

added).  However, "a default judgment issued without jurisdiction over a defendant is void, …

remains vulnerable to being vacated at any time, and … such jurisdiction depends on the proper

service of process or the waiver of any defect."  *M & K Welding, Inc. v. Leasing Partners, LLC*,

386 F.3d 361, 364 (1st Cir. 2004) (citing *Precision Etchings & Findings v. LPG Gen Ltd.,* 953

F.2d 21, 23 (1st Cir. 1992) (affirming the district court's ruling vacating a default judgment as

void for defective service of process); *Dumas v. Tenacity Constr. Inc.*, 121 N.E.3d 711, 715

(Mass. App. Ct. 2019) (same).  Although entry of default may establish liability, it does not

establish the amount of damages owed to the plaintiff for purposes of default judgment.  *See G.

& C. Merriam Co. v. Webster Dictionary Co.*, 639 F.2d 29, 34 n.7 (1st Cir. 1980).

     b.  <u>Plaintiff Did Not Properly Serve Process Under Rule 4(h)</u>

     Plaintiff is not entitled to entry of a default judgment against MJA or NJP because he did

not properly serve process on either of these entities.  Federal Rule of Civil Procedure 4(h)

provides that service on a corporation or an association such as a limited liability company must,

insofar as relevant in this case, be made "in the manner prescribed by the law of the state in

which the district court is located or … by delivering a copy of the summons and complaint to an

officer, a managing or general agent, or another agent authorized by appointment or by law to

receive service of process."  *Richardson v. Downing*, 209 F.R.D. 283, 284 (D. Mass. 2002)

(citing Fed. R. Civ. P. 4(d), 4(h)).  Massachusetts law provides that service on a corporation or

an unincorporated association such as a limited liability company may be made by "delivering a

copy of the summons and of the complaint to an officer, to a managing or general agent, or to the

person in charge of the business at the principal place of business thereof within the

Commonwealth, if any; or by delivering such copies to any other agent authorized by

appointment or by law to receive service of process, provided that any further notice required by

law be given."  Mass. R. Civ. P. 4(d)(2).  Thus, for purposes of this case, federal and state requirements for service of process on a corporation or association are the same.

It is obvious that Plaintiff failed to serve MJA and NJP in compliance with the applicable rules.  The returns of service Plaintiff filed as to MJA and NJP show that the individual who purported to make service on these entities left copies of the summonses and complaints at the property or properties to which he was directed and that there was no one present to receive the summonses or complaints (Dkt. Nos. 14 & 15).  Leaving the complaints and summons at the property or properties to which the process server was directed was not "delivery" to "an officer, to a managing or general agent, or to the person in charge of the business at the principal place of business thereof within the Commonwealth" and did not satisfy the requirements of Fed. R. Civ. P. 4(h) (or Mass. R. Civ. P. 4(d)(2)).  *See Aly v. Mohegan Counsel-Boy Scouts of America*, Civil Action No. 08-40099-FDS, 2009 WL 3299951, at *1 (D. Mass. Apr. 20, 2009) ("Accordingly, in order to effect proper service, at the very least plaintiff would have had to deliver a copy of the summons and complaint to some *person* affiliated with the [corporation or unincorporated association].") (emphasis in original); *cf. Crossetti v. Cargill, Inc.*, Case No. 3:18-cv-30002-KAR, 2018 WL 2770130, at *3 (D. Mass. June 8, 2018) (discussing the distinction between personal delivery and delivery by mail); *Emery v. Wood Indus., Inc.*, No. Civ. 98-480-M, 2001 WL 274747, at * 3 (D.N.H. Jan. 17, 2001) (Fed. R. Civ. P. 4(h) requires personal delivery to an appropriate agent of a corporation or association).  Leaving a copy of a complaint and a summons at an address where there is no one to receive the documents, let alone anyone authorized by rule or statute or by status as an agent to receive process, as was done in the instant case, does not constitute delivery to an officer, managing or general agent or a person in charge of a business.

6

Plaintiff's subsequent use of certified mail to attempt service on MJA and NJP did not constitute proper service under federal or state law because certified mail is not identified in Fed. R. Civ. P. 4(h) or Mass. R. Civ. P. 4(d)(2) as an acceptable form of service on a corporation or an association. *See Gilliam v. County of Tarrant*, 94 Fed. App'x. 230, 230 (5th Cir. 2004); *Awadh v. Tourneau*, Civil Action No.: 15-cv-13993, 2017 WL 1246326, at *2 (D. Mass. Feb. 17, 2017); *Cichocki v. Mass. Bay Cmty. Coll.*, 174 F. Supp. 3d 572, 576 (D. Mass. 2016). There is nothing in the record to suggest that either MJA or NJP waived its right to service. "Thus, as it stands, service that complies with Rule 4 has not been effected and the [90]-day time period has now elapsed." *Aly,* 2009 WL 3299951, at *2. The court has already repeatedly extended the time for Plaintiff to make effective service and he failed to do so (Dkt. No. 27, 32). Accordingly, this is not a case in which Plaintiff should be given a further opportunity to cure the defect in service. In summary, the undersigned recommends that the court decline to enter a default judgment against MJA or NJP because Plaintiff failed to effect service on these entities in compliance with Fed. R. Civ. P. 4(h) and, accordingly, the court lacks jurisdiction over them, *see M & K Welding, Inc.*, 386 F.3d at 364.

c.   The Pleadings Fail to State a Claim Against MJA or NJP

Even if Plaintiff had properly served MJA or NJP, which he did not, entry of a default judgment against MJA or NJP is inappropriate for the additional reason that the pleadings fail to state a cause of action against either of these defendants.

1.   Corporate Disregard

While Plaintiff's pleadings are not clear on this point, it is a reasonable inference that Plaintiff named MJA and NJP as defendants on the grounds that these entities were somehow affiliated with receiver MJABE and liable based on MJABE's appointment and activities as

receiver at 155-157 Oak Grove Avenue.  "In Massachusetts, there is a presumption of corporate separateness: separate corporations are to be treated as separate entities absent an affirmative showing of compelling circumstances."  *Egan v. Tenet Health* Care, 193 F. Supp. 3d 73, 82 (D. Mass. 2016) (citing *Platten v. HG Bermuda Exempted Ltd.*, 437 F.3d 118, 128 (1st Cir 2006)).  A party may overcome that presumption "by the operation of the doctrine of corporate disregard, which applies only when there is a compelling reason of equity 'to look beyond the corporate form for the purpose of defeating fraud, or wrong, or for the remedying of injuries.'"  *Id.* (quoting *Gurry v. Cumberland Farms, Inc.*, 550 N.E.2d 127, 134 (Mass. 1990) (quoting *My Bread Baking Co. v. Cumberland Farms, Inc.*, 233 N.E. 748, 751 (Mass. 1968)).  Factors that may justify corporate disregard include: "(1) common ownership; (2) pervasive control; (3) confused intermingling of business assets; (4) thin capitalization; (5) nonobservance of corporate formalities; (6) absence of corporate records; (7) no payment of dividends; (8) insolvency at the time of the litigated transaction; (9) siphoning away of corporation's funds by dominant shareholder; (10) non-functioning of officers and directors; (11) use of the corporation for transactions of the dominant shareholders; and (12) use of the corporation in promoting fraud."  *Id.* at 82 (citing *Platten v. HG Bermuda Exempted Ltd.*, 437 F.3d 118, 128 (1st Cir. 2006) (citing *Pepsi-Cola Metro Bottling Co. v. Checkers, Inc.*, 754 F.2d 10, 14-16 (1st Cir. 1985); *Attorney Gen. v. M.C.K., Inc.*, 736 N.E.2d 373 (Mass. 2000)).  As previously noted, it is not clear from the record that MJA exists as an entity separate from MJABE.  The complaint and the accompanying affidavit appear to allege common ownership between MJABE and NJP (Dkt. No. 1-1 at 1), but there are no allegations concerning any of the other factors set out above as to the relationship between MJABE and NJP.  Records from the Housing Court show that MJABE was appointed by the Housing Court as a receiver after Plaintiff repeatedly failed to address conditions at the

Oak Grove Avenue property and that Campagnari was appointed as a successor receiver.

Plaintiff did not allege any circumstances, let alone compelling circumstances, that would

warrant the extension of possible liability to any entity that he believed was affiliated with

MJABE, the entity that was actually appointed as the initial receiver by the Housing Court.

2.   A Receiver is Protected by Quasi-Judicial Immunity

As this court has already ruled in connection with Plaintiff's claims against Campagnari,

a receiver is entitled to immunity from claims based on its actions in its capacity as a receiver.

"The doctrine of quasi-judicial immunity provides absolute immunity for those who perform

tasks that are inextricably intertwined with the judicial function." *Nystedt v. Nigro*, 700 F.3d 25,

30 (1st Cir. 2012). "[A] receiver who . . . carries out the orders of [its] appointing judge must

share the judge's absolute immunity." *Kermit Constr. Corp. v. Banco Credito Y Ahorro*

*Ponceno*, 547 F.2d 1, 3 (1st Cir. 1976). "[I]n order to end the harassment [of vexatious

litigation] as quickly as possible in appropriate cases, the burden of pleading and of showing the

absence of privilege falls on the plaintiff." *Id.* There are two recognized exceptions to the

principle of quasi-judicial immunity. "The first of these exceptions relates to non-judicial acts,

*see, e.g., Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 435-36 . . . (1993); *Cok v. Cosentino*,

876 F.2d 1, 3 (1989) (1st Cir. 1989); the second relates to acts which, 'though judicial in nature,'

are 'taken in the complete absence of all jurisdiction.' *Mireles v. Waco*, 502 U.S. 9, 11-12 . . .

(1991)." *Nystedt*, 700 F.3d at 31.

"Judicial acts are those that are 'intimately associated' with the judicial function." *Id.*

(citing *Burns v. Reed*, 500 U.S. 478, 486 (1991)). "Judicial immunity extends . . . to those who

carry out the orders of judges." *Slotnick v. Garfinkle*, 632 F.2d 163, 166 (1st Cir. 1980).

MJABE, as a receiver appointed to bring the property at 155-157 Oak Grove Avenue into code

compliance, was engaged in a so-called judicial act.  After hearing, the Housing Court found that the property at 155-157 Oak Grove Avenue was a fire risk, a blight on the neighborhood, unsafe, and not in compliance with the State Sanitary and Building Codes (Dkt. No. 19-2 at 6).  MJABE was appointed by an Associate Justice of the Housing Court to act as receiver of the property (Dk. No. 19-2 at 21), and granted extensive authority and duties in connection with that appointment, including dismantling scaffolding around the property; cleaning the property of all debris and trash; inspecting the property to determine what repairs needed to be made to correct violations of the State Sanitary Code and applicable fire safety, electrical and plumbing codes; and performing or causing to be performed the repairs necessary to eliminate code violations (*id.* at 7-8).  In developing a plan for, and carrying out, repairs at 155-157 Oak Grove Avenue, MJABE was "carrying out the official directives of a judge," *Slotnick*, 632 F.2d at 166, who had concluded that repairs were necessary to eliminate violations that might endanger the health or safety of future tenants or the public, and ordered that such repairs be performed (Dkt. No. 19-2 at 8).  *See Kermit*, 547 F.2d at 3 (court-appointed receiver entitled to absolute quasi-judicial immunity); *see also Cok*, 876 F.2d at 3 (individuals appointed by a court as conservator of assets and partition sales commissioner in connection with divorce proceeding entitled to absolute quasi-judicial immunity because they were an integral part of the judicial process).  Neither the complaint nor the supporting affidavit alleges that MJABE committed any non-judicial act.

Based on the appointment of Campagnari as a successor receiver with a lien superior to any lien of MJABE, it is reasonable to infer from the pleadings and other documents that MJABE's performance as a receiver was deficient.  But, "[t]he fact that a court-appointed [receiver] performs a judicial function in an imperfect (or even unethical) way does not, by itself, dissolve his quasi-judicial immunity."  *Nystedt*, 700 F.3d at 31; *see also Cok*, 876 F.2d at 3

(allegations of malice, bad faith, or conspiracy will not circumvent absolute quasi-judicial immunity). "[E]ven bad faith or malice will not divest the cloak of judicial immunity." *Nystedt*, 700 F.3d at 33. To the limited extent Plaintiff alleges that MJABE's performance as a receiver was lacking, such an allegation is unavailing to divest MJABE of quasi-judicial immunity and establish liability on the part of MJABE or, by extension, MJA or NJP.

The pleadings do not disclose any basis for a contention that MJABE's actions as a receiver were taken in the absence of all jurisdiction. The Housing Court has jurisdiction over code enforcement proceedings and statutory authority to appoint a receiver where violations of the State Sanitary Code will not be promptly remedied unless a receiver is appointed and the court finds that such an appointment is in the best interests of future occupants of the property and public safety. *See* Mass. Gen. Laws ch. 111, § 127*I*. Thus, the Housing Court had a well-established jurisdictional basis for the appointment of MJABE as receiver.

Plaintiff's claim that the property at 155-157 Oak Grove Avenue was not in a condition that justified appointment of a receiver is unavailing. First, the court is not required to accept this claim at face value, where it is wildly at odds with the state court records of the code enforcement proceedings and documents Plaintiff has submitted in this case (e.g., Dkt. No. 39-1). *See Katz v. McVeigh*, 931 F. Supp. 2d 311, 320 (D.N.H. 2013) (to the extent a plaintiff's claims are at odds with matters of public record, a court is not required to accept the plaintiff's version of the facts on a motion to dismiss) (citing *Rederford v. U.S. Airways, Inc.*, 589 F.3d 30, 35 n.4 (1st Cir. 2009)). Second, the United States Supreme Court "has squarely held that absolute judicial immunity is ineffaceable even in the presence of 'grave procedural errors.'" *Nystedt*, 700 F.3d at 32 (quoting *Stump v. Sparkman*, 435 U.S. 349, 359 (1978)) (rejecting

11

arguments that absence of need for discovery master and excess costs of discovery master's

services stripped discovery master of absolute quasi-judicial immunity).

Finally, there is a fundamental flaw in Plaintiff's attempt to recover damages by a

complaint filed in this court based on the work done by any receiver at the direction of the

Housing Court:

> His claims amount to nothing more than claims of error that [were or could have
> been] addressed in the [code enforcement proceeding] itself.  After all, "[w]ere
> collateral and retrospective attacks on technical defects of court appointments
> permitted, the court's work in an already difficult litigation field would often be
> undone, with consequent uncertainty, delay and frustration."  *Brown [v.*
> *Newberger*, 291 F.3d [89,] 94 [(1st Cir. 2002)].  The plaintiff could, for example .
> . . have raised the points on appeal.  After all, one of the primary purposes of
> judicial immunity is to "establish appellate procedures as the standard system for
> correcting judicial error."  *Forrester* [*v. White*], 484 U.S. [219,] 225 [(1988)].

*Nystedt*, 700 F.3d at 32-33.  Plaintiff's objections to the appointment of a receiver were heard

and ruled on by the Housing Court, and those rulings could have been challenged by appeal in

the state court system.  He cannot assert them here.  *See Nystedt*, 700 F.3d at 32-33.

Plaintiff's claims for damages in his Motion to Enter Judgment in the Amount Claimed

on the Statement of Damages are based on Plaintiff's loss of the real property at 155-157 Oak

Grove Avenue and personal property he left on the premises after he was given a long time and

many opportunities to remedy conditions on the property *and* remove personal property from the

premises (Dkt. No. 19-2).  It is apparent from Mr. Gedeon's filings that the loss of the real and

personal property was painful to him.  Nonetheless, the Housing Court records show that

evidentiary hearings confirmed the validity of the City's concerns about the property's condition.

In granting the City's and the successor receiver's motions to dismiss, this court has already

ruled that Mr. Gedeon's pleadings failed to state a claim that he was entitled to any relief based

on the Housing Court's orders authorizing remediation and auction of the property at 155-157

Oak Grove Avenue.  Plaintiff has not alleged any act by MJABE that was unconnected to its role

as a court-appointed receiver and he has not alleged any act by MJA or NJP that would entitle

him to recovery against any of these entities.  In addition to the failure to make service, the

pleadings fail to state a cognizable claim against MJABE and, by extension, against MJA or NJP.

For this reason also, the undersigned recommends that the court deny Plaintiff's Motion to Enter

Judgment in the Amount Claimed on the Statement of Damages (Dkt. No. 89) and close the case

on the court's docket.

    IV.   C<small>ONCLUSION</small>

    For the foregoing reasons, the undersigned recommends that Plaintiff's Motion to Enter

Judgment in the Amount Claimed on the Statement of Damages be DENEID, and that the court

close the case on its docket.[4]

Dated:  September 30, 2019               /s/ Katherine Robertson
                                    KATHERINE ROBERTSON
                                    UNITED STATES MAGISTRATE JUDGE

---

[4] The parties are advised that under the provisions of Fed. R. Civ. P. 72(b) or Fed. R. Crim. P. 59(b), any party who objects to these findings and recommendations must file a written objection with the Clerk of this Court **within fourteen (14) days** after being served with a copy of this Report and Recommendation.  The written objection must specifically identify the portion of the proposed findings or recommendations to which objection is made and the basis for such objection.  The parties are further advised that failure to comply with this rule shall preclude further appellate review by the Court of Appeals of the District Court order entered pursuant to this Report and Recommendation.  *See Keating v. Sec'y of Health & Human Servs.*, 848 F.2d 271, 275 (1st Cir. 1988); *United States v. Valencia-Copete*, 792 F.2d 4, 6 (1st Cir. 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *United States v. Vega*, 678 F.2d 376, 378-379 (1st Cir. 1982); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603, 604 (1st Cir. 1980).  *See also Thomas v. Arn*, 474 U.S. 140, 154-155 (1985).  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.